UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTONIO JAMES JIMENEZ,

Plaintiff,

vs. CASE NO.: 6:10-cv-640-Orl-35KRS

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

Defendant.
______________________________________________/

**GEICO'S MOTION FOR SUMMARY JUDGMENT**

**GOVERNMENT EMPLOYEES INSURANCE COMPANY** ("GEICO"), by and through undersigned counsel and pursuant to Fed.R.Civ.P. 56, respectfully requests that this Honorable Court enter summary judgment in favor of GEICO. In support of its request, GEICO states as follows:

1. In the action that forms the basis for the present litigation, Maria Sanchez, as personal representative of the Estate of Pablo Daniel Peralta Pinedo, on behalf of the Estate and survivor ("Pinedo")filed suit against GEICO insured, ANTONIO JIMENEZ ("JIMENEZ") in the Circuit Court in and for Orange County, Florida, Case Number 07-CA-18159, on or about December 26, 2007 (hereinafter the "underlying action"). Pinedo sued JIMENEZ to recover for the wrongful death resulting from a motor vehicle accident that occurred on or about March 4, 2006. On December 15, 2008, JIMENEZ stipulated to entry of a judgment against him in the Pinedo lawsuit in the amount of $1,000,000 [Doc.1, Exhibit 3].

2. On April 23, 2010, JIMENEZ filed a two-count Complaint against GEICO for Breach of Contact and Bad Faith. [*See* Doc. 1]. JIMENEZ alleges that GEICO breached the

insurance policy contact by "failing to settle the Pinedo Claim when it was presented" and by "refusing to unconditionally defend Plaintiff in the Pinedo Suit." [Doc. 1 at ¶¶ 19 and 22]. Further, JIMENEZ alleges that GEICO acted in bad faith in its handling of the claims that were presented against him as a result of the March 4, 2006 accident [Doc. 1 at ¶¶ 29-31].

3. GEICO is entitled to summary judgment because , as a matter of law, GEICO did not breach its insurance policy contract with JIMENEZ and no reasonable jury could conclude, under the totality of the circumstances, that GEICO acted in bad faith in its handling of the multiple claims that arose out of the March 4, 2006 accident, including the Pinedo claim.

## I. STATEMENT OF MATERIAL FACTS

GEICO issued policy number 4012-43-17-73 ("the Policy") to Marlyn Santiago ("Santiago") and JIMENEZ, effective March 3, 2006 through September 3, 2006 [Ex. A, Affidavit of Coverage and Certified copy of the Policy, GLC2583; GLC 2584-2597]. A 1997 Honda and 2001 Jaguar were listed vehicles on the Policy [*Id.*]. The Policy provided Bodily Injury ("BI") coverage limits in the amount of $10,000 per person/ $20,000 per occurrence [*Id.*].

On March 4, 2006, at approximately 1:49 a.m., JIMENEZ's 1997 Honda was involved in a multi-vehicle automobile accident ("the accident")[Ex. B, Fla. Traffic Crash Report, GLC 03670-03673]. The accident occurred on Interstate 4 in Orange County, Florida when JIMENEZ's vehicle struck a vehicle operated by Pedro Ortega ("Ortega"), causing Ortega's vehicle to cross from the westbound direction into Interstate 4. [*Id.*]. After crossing over into eastbound traffic, Ortega's vehicle collided head-on with a vehicle operated by Ada Farley [*Id.*]. At the time of the accident, John Farley and Pablo Pinedo ("Pinedo") were passengers in the Ada Farley vehicle [*Id.*]. The accident resulted in the deaths of Ada Farley and Pinedo and bodily

injuries to Ortega and John Farley [*Id.*]. The operator of the JIMENEZ vehicle fled the scene of the accident [*Id.*].

On the same day, at approximately 2:45 p.m., JIMENEZ reported his car stolen to the Orlando Police Department ("OPD")[Composite Ex. C, OPD Theft Statement and Stolen Vehicle Affidavit, GLC 05249-05250; OPD Motor Vehicle Theft Report, GLC 04538-04541]. JIMENEZ also provided a sworn written statement of the vehicle theft and signed a Stolen Vehicle Affidavit [*Id.*]. JIMENEZ stated under oath that his 1997 Honda Accord was stolen from his home, that no one had permission to take the vehicle, that he did not know of its whereabouts, or what happened to the vehicle [*Id.* at GLC 05249].

Later, at approximately 4:02 p.m., Santiago reported the theft of JIMENEZ's vehicle to GEICO [Ex. D, GEICO's Activity Log for Claim #024028251-0101-029, GLC 00988-001036, at GLC 001036]. Santiago advised that theft had been reported to the police and that she was unaware of who stole the vehicle and that the keys to the vehicle were unaccounted for [*Id.*]. GEICO began its investigation of the theft the same day [*Id.*].

On March 10, 2006, GEICO requested a copy of the theft report from the OPD [Ex. D at 001035]. On the same day, GEICO was advised that JIMENEZ's stolen vehicle had been involved in an accident that had resulted in the deaths of Ada Farley and Pinedo and bodily injuries to Ortega and John Farley [Ex. D at GLC 001034]. GEICO was further advised that Ortega was admitted to the hospital and underwent surgery on his foot and that he was being represented by attorney Glenn Klausman ("Klausman") for his injuries [*Id.*]. GEICO began its investigation of the accident the same day [*Id.*]. On March 13, 2006, GEICO adjuster Lisa Depoy ("Depoy") left a message for JIMENEZ to discuss the theft and injury claims [*Id.*]. Depoy also

instructed a GEICO field representative to obtain the accident and theft reports from the OPD [Ex. E, GLC 02702]. The next day, March 14, 2006, GEICO adjuster Vicky Lazenby ("Lazenby") obtained a recorded statement from JIMENEZ regarding the vehicle theft and accident [Exhibit F, Recorded interview of JIMENEZ, GLC 0015-0021, *See also* Ex. D at GLC 001033]. JIMENEZ stated that he discovered his vehicle missing on the morning of March 4, 2006 and reported it stolen with the OPD that day [Ex. F at GLC 0017]. JIMENEZ advised that his only cars key were missing and that he did not know if he might have left the keys in the "the back of the trunk or in the door." [*Id*.]. JIMENEZ also stated that he was advised by OPD that the vehicle had been involved in an accident that resulted in two deaths, but maintained that he was victim [*Id*. at GLC 0018].[1] On March 20, 2006, JIMENEZ advised GEICO that there was only one set of keys for his vehicle and that he had retained attorney Tim Hartung ("Hartung") to represent him [Ex. D at GLC 001032]. JIMENEZ also advised that on the night of the accident he had gotten home at 7:00 p.m. and had watched movies and played video games with his roommate [*Id*.]. On March 21, 2006, Depoy sent JIMENEZ a Reservation of Rights ("ROR") letter advising that the coverage may not apply for the accident because the "driver of the vehicle may not be an insured under the policy as defined in Section I Liability Coverages-Person Insured." [Ex. G, GLC 05358]. On March 23, 2006, Depoy was advised by attorney Jim Clark ("Clark") that he represented John Farley and Ada Farley ("the Farleys")[Ex. D at GLC 001031]. Clark advised that Ada Farley died and that John Farley sustained a fracture to his arm

1

JIMENEZ also verified his address was 5785 Gatlin Ave., Apt. #711, Orlando, FL 32822 [Ex. F at GLC 0016]. Further, JIMENEZ acknowledged that his statements were true and correct to the best of his knowledge [*Id*. at GLC 0020].

and femur with internal fixation, a crushed ankle and other injuries in the accident [*Id*.]. Depoy advised that the insured vehicle was stolen and GEICO's investigation was ongoing [*Id*.].

On April 12, 2006, GEICO received a time limit demand from attorney Klausman demanding tender of the $10,000 BI policy limits for the injuries to Ortega by May 5, 2006 [Ex. H, G-CVG 03233-3244].

On April 17, 2006, GEICO home office attorney, Mike Gilliom ("Gilliom"), discussed the vehicle theft and the facts of the accident with, among others, Depoy [Ex. D at GLC 001027]. Gilliom gave Depoy the Policy limits authority of $20,000 to settle all BI claims on the basis that coverage existed for the accident because the JIMENEZ vehicle had been started with a key [*Id*.]. Gilliom instructed Depoy to retain an attorney to represent JIMENEZ and to set up a global settlement conference to settle the claims [*Id*.].

On the same day, Depoy advised JIMENEZ of Klausman's demand and that GEICO was going to set up a global settlement [Ex. I, GLC 02426; 02422]. Depoy advised that GEICO had hired attorney John Golding ("Golding") to represent JIMENEZ and his interests in the global settlement [*Id*.]. Depoy also advised JIMENEZ that GEICO would defend any law suit filed against him, that the possibility existed of a judgment that exceeded his policy limits, his right to retain personal counsel and his right to personally contribute towards settlement [*Id*.].[2] Depoy also sent letters to Klausman, Clark and the Family of Pinedo[3] advising that GEICO was arranging a global settlement conference "in hopes of settling all claims" against Marlyn

---

2

On May 1, 2006, Golding sent JIMENEZ a letter explaining his representation and advising as to issues regarding the global settlement conference [Ex. M GHOC 1233-34].

3

GEICO sent the Pinedo letter to the address that was listed for Pinedo on the accident report [Ex. B]. Golding also sent a letter to the Family of Pinedo, advising of other claimants and the global settlement conference [Ex. N, 0005275]

Santiago and JIMENEZ [Ex. J, G-CVG 3226-03227; Ex. K, GLC 02678-02679; Ex. L, GLC 02697-02698]. JIMENEZ was copied on the letters [*Id*.].

On April 27, 2006, Depoy responded to Klausman's demand for Ortega by advising that GEICO could not accept or reject the demand because GEICO was coordinating a global settlement conference to address all claims regarding the accident and that GEICO would address the resolution of Ortega's BI claim at the conference [Ex. O, GLC 02418]. JIMENEZ was copied on this letter [*Id*.].

On May 5, 2006, Depoy was advised that Klausman, on behalf of Ortega, and Clark, on behalf of the Farleys, agreed to attend a global settlement conference [Ex. P, GLC 02225]. On the same day, Depoy instructed a GEICO field adjuster to visit Pinedo's last known address to locate a family member for the global settlement conference [Ex. Q, GLC 02404-02405; Ex. D at GLC 001024-1025]. On May 11, 2006, the GEICO field representative advised Depoy that he was informed by Pinedo's supervisor, "Maria Usera," that Pinedo was here from Uruguay, not married, had a six month old child, and that Pinedo was cremated and taken back to Uruguay with the mother and child [Ex. D at GLC 001024]. Depoy advised Golding of the new information on Pinedo [Ex. R, GLC 02454].

On May 15, 2006, Depoy was advised that attorney William McBride ("McBride") was retained on behalf of Pinedo [Ex. D GLC 001023]. On the same day, Depoy left a message with McBride's office for a return call and for a letter of representation [*Id*.]. Depoy also sent Golding and JIMENEZ a letter advising of the new attorney information on Pinedo [Ex. S, GLC 02693]. On May 18, 2006, Depoy sent McBride a letter advising that GEICO was setting up a global settlement conference in an attempt to settle all claims against JIMENEZ [Ex. T, GLC

02691-92]. JIMENEZ was copied on this letter [*Id*.]. That same day, attorney Tammy Cicchetti ("Cicchetti") sent a letter to Klausman, Clark, Hartung, Golding, and the Family of Pinedo, advising that she was retained by GEICO to set up a global settlement conference to try and reach a fair resolution of the claims [Ex. U, GLC 02754-55]. Cicchetti acknowledged that the $10,000/$20,000 BI Policy limits were insufficient to compensate any one of the parties in this case [*Id*.]. Cicchetti advised of possible mediators and dates for the conference and requested that the parties advise their availability [*Id*.]. Cicchetti also sent this letter to McBride under separate cover [Ex. V, GLC 02753].

On May 31, 2006, Cicchetti advised, Klausman, Clark, Golding and attorney Mike Romano ("Romano")(counsel for Ortega's insurer Progressive) that the global settlement conference call was scheduled for June 26, 2014 [Ex. W, GLC 02751]. Cicchetti also requested that the parties send any materials they wanted reviewed prior to the conference [*Id*.].[4] On June 23, 2006, Clark advised Cicchetti that he no longer represented the Farleys and was not attending the conference [Ex. X, GLC 02748]. Cicchetti requested that Clark advise Mr. Farley of the conference [*Id*.].

On June 26, 2006, the global settlement conference call was held with Cicchetti, Klausman (for Ortega), Golding (for JIMENEZ), and Romano (for Progressive) in attendance [Ex. Y, GLC 02734; *See* Ex. D at GLC 001022]. No one attended the conference on behalf of the Farleys or Pinedo [*Id*.]. At the conference, with no representative for the Farleys or Pinedo in

---

4

This letter was copied to the Family of Pinedo [Ex. W]. On or about May 31, 2006, Cicchetti was advised that McBride no longer represented Pinedo [Ex. BB, GLC 02750]. As of this date, GEICO had not been contacted by any representative of Pinedo's estate or survivors.

attendance, Cicchetti offered to settle Ortega's BI claim for the $10,000 BI policy limits [Ex. Y; *See* Ex. Z, GLC 02728-30]. Klausman rejected the policy limits settlement offer [*Id.*].[5]

On July 20, 2006, Depoy advised JIMENEZ that GEICO received a copy of a lawsuit filed against him by Ortega and that the defense of same was being transferred from Golding to the law firm of Ringer, Henry, Buckley & Seacord ("Ringer Henry")[Ex. AA, GLC 03116-17]. Attorney Sharome Deaton ("Deaton") of Ringer Henry defended JIMENEZ in the Ortega litigation. During discovery in the Ortega litigation, JIMENEZ maintained that his vehicle had been stolen and that he was not involved in the accident [*See e.g.* Composite Ex. EE, GLC 04520-33; 04544-46]. Thereafter, Cicchetti continued her attempts to set up a second global settlement conference [Composite Ex. FF, G-CVG 02280-81; GLC 02094; G-CVG 01957-58].[6] JIMENEZ was advised of GEICO's attempts to coordinate a second global settlement conference [*Id.*; Ex. GG, GLC 02090-91].

On October 3, 2006, Deaton advised GEICO that JIMENEZ had been charged with eight (8) criminal counts relating to the accident, including two (2) counts of vehicular homicide, two (2) counts for leaving the scene of the accident, two (2) counts for filing false police reports and two (2) counts for making false statements [Ex. D at GLC 001017]. Thereafter, on April 9, 2007, Deaton informed Depoy that JIMENEZ accepted a plea bargain in the criminal matter and pled guilty for leaving the scene of the accident involving a death and for failing to render aid [Ex.

5

Thereafter, Cicchetti tendered the $10,000 BI policy limits to Klausman and same was again rejected [Ex. Z, Ex. CC, GLC 02723-25]. JIMENEZ was advised that the global settlement conference was unsuccessful and that he may receive suit papers [Ex. Y; *See* Ex. Z; *See* Ex. DD, GLC 02737; Ex. D at GLC 001021].

6

On August 10, 2006, attorney Alexander Clem ("Clem") advised GEICO that he now represented the Farleys for the accident [ Ex. D at GLC 001019; Ex. JJ, GLC 02673]. Cicchetti included Clem in attempts to set the second global settlement conference [*See* Ex. KK, G-CVG 01957-58].

HH, GLC 02479-80]. Deaton advised that sentencing would occur on May 18, 2007 [*Id*.].[7] On the same day, Depoy sent JIMENEZ a second ROR advising him that coverage may not apply for the accident because of his fraud and material misrepresentations in reporting the theft of his vehicle and the accident [Ex. II, G-CVG 01009-11]. GEICO advised JIMENEZ's actions in pleading guilty to the criminal charges was not expected based on his prior statements and testimony in the civil litigation [*Id*. at G-CVG 01011]. GEICO stated that "[c]overage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance: 1) at any time during the policy period; or 2) in connection with the presentation or settlement of a claim"[*Id*.].

On April 13, 2007, GEICO decided to file a declaratory judgment action to determine coverage based JIMENEZ's fraud and material misrepresentations in reporting the theft of his vehicle and the accident [Ex. LL, G-CVG 04712].

On May, 2, 2007, GEICO received a letter of representation dated April 23, 2007 from attorney James O. Cunningham ("Cunningham") advising that he represented Aldina Alarcon Lopez, guardian of Guillermo Alarcon ("Alarcon"), a minor, who was the surviving child of Pinedo [Ex. MM, GLC 02959]. Depoy requested that Deaton represent JIMENEZ against any pending action on behalf of Guillermo Alarcon regarding the accident [Ex. NN, GLC 03081].[8]

7

On May 21, 2007, GEICO was advised that JIMENEZ allocuted at his sentencing hearing that he was driving the vehicle in the accident and lied in his prior statements and depositions and that JIMENEZ was sentenced to ten (10) years in prison [Exhibit D at GLC 001009].

8

On May 15, 2007, Deaton advised Cunningham that she represented JIMENEZ, that GEICO had reserved coverage defenses and requested documentation for the relationship between Alarcon and Pinedo [Ex. QQ, GLC 0284-85]. On May 25, 2007, Cunningham provided a DNA test report confirming that paternity of Pinedo [Ex. RR, GLC 02920].

On June 26, 2007, GEICO filed a declaratory judgment action against JIMENEZ , Ortega, the estate and survivors of Pinedo, and the Farleys. This action asserted that the claims relating to this accident were not covered under the GEICO policy issued to JIMENEZ due primarily to his material misrepresentations and false statements made to GEICO regarding his role in the accident and his vehicle being stolen [Ex. OO, GLC 05198-05288].

On July 11, 2007, Deaton forwarded to Depoy a July 9, 2007 time limited demand received from Cunningham on behalf of Alarcon demanding payment of the full $10,000 BI policy limits within twenty (20) days [Exhibit PP, GLC 04953-56]. JIMENEZ was copied with the demand [*Id.*].

On July 23, 2007, Depoy advised Deaton that due to the pending declaratory judgment action and the multiple claims, GEICO was not going to make a payment on any demand until the coverage issue was resolved by the court [Ex. SS, Ringer 0010; Ex. TT, GLC 05194*; See* Ex. D at GLC 001007]. On July 30, 2007, Deaton sent Cunningham a letter stating that "[a]t this time, neither GEICO nor Jimenez has authorized me to settle this matter." [Ex. UU, GLC 05193].

On February 14, 2008, attorney Rick Martindale ("Martindale"), on behalf of JIMENEZ, forwarded to Depoy a copy of a lawsuit filed against JIMENEZ by Cunningham, on behalf of the estate and survivors of Pinedo [Exhibit VV, GLC 05463-76]. Martindale advised that he accepted service on behalf of JIMENEZ and was tendering the defense of the lawsuit to GEICO [*Id*. at GLC 05463]. Depoy requested that Deaton proceed with the defense of the Pinedo lawsuit [Ex. WW, GLC 05461-76]. However, on February 29, 2008, attorney Mark Nation ("Nation"), on behalf of JIMENEZ, advised GEICO that JIMENEZ "hereby rejects the offer of a defense

under a reservation of right" and that JIMENEZ would "seek alternative counsel to represent him" in the Pinedo lawsuit [Ex. XX, GLC 05460; *see also* Doc. 1 at ¶12]. On July 3, 2008, Depoy advised Martindale and Nation that GEICO was tendering a defense to JIMENEZ under a reservation of rights and requested that they reconsider their rejection and accept the tendered defense [Ex. YY, G-CVG 01020-21]. On July 22, 2008, Nation responded that his February 29, 2008 letter "was quite clear in that we were rejecting the defense being offered in the Pinedo matter" [Ex. ZZ, GLC 06866].

On December 15, 2008, a Stipulated Final Judgment was entered against JIMENEZ in the Pinedo matter in the amount of $1,000,000 [Ex. AAA, Stipulate Final Judgment ].[9]

## II. <u>STATEMENT OF APPLICABLE LAW</u>

### A. Summary judgment standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." *Mullins v. Crowell*, 228 F. 3d 1305, 1313 (11th Cir. 2000). Once the moving party has satisfied its burden, the burden shifts to the nonmoving party, who must show "that summary judgment would be inappropriate because there exists a material issue of fact." *Id*. "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods*,

9

On March 17, 2010, the trial court in the Declaratory Judgment ruled that there was coverage, finding that GEICO did meet the terms of the Claims Administration Statue (627.426) and further that JIMENEZ's misrepresentations were not material misrepresentation [Doc.1 at Ex.4]. On January 22, 2013, the trial court's ruling was Per Curiam Affirmed by the Fifth District Court of Appeals. *See Geico Gen. Ins. Co. v. Jimenez*, 105 So. 3d 539 (Fla.5th DCA 2013).

*Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of material fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*. Summary judgment for the moving party should be granted when the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577)(11th Cir. 1990)(citing *Anderson*, 477 U.S. at 252).

**B. The law of bad faith in Florida**

Florida common law provides that insurers owe "a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement," otherwise known as the duty of "good faith." *State Farm Mut. Auto Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995)(emphasis added). The duty of good faith obligates an insurer to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980). In this regard an insurer is obligated to "advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same. *Id.*

The bad faith is determined under the "totality of the circumstances" standard. *Berges v. Infinity Insurance Company*, 896 So.2d 665, 680 (Fla. 2004). In attempting to settle multiple claims with minimal policy limits, an insurer acting in good faith must:

> (1) fully investigate all claims at hand to determine how to best limit the insured's liability
> (2) seek to settle as many claims as possible within the policy limits,

> (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement, and
> (4) keep the insured informed of the claim resolution process

*Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So.2d 555, 560 (Fla. 4th DCA 2003); *Gen. Sec. Nat. Ins. Co. v. Marsh*, 303 F. Supp. 2d 1321, 1325 (M.D. Fla. 2004)(applying *Farinas*). An insurer does not have a duty to actually settle all claims within the policy limits. Rather, an insurer has a duty to reasonably attempt to settle all claims within the policy limits [*Id.*]. Florida law provides that in evaluating multiple claims that arise out of one accident, an insurer has discretion in how it elects to settle claims, and may choose to settle certain claims to the exclusion of others, provided that the decision is reasonable and is in accordance with the insurer's duty of good faith to its insured. *Marsh*, 303 F. Supp. 2d at 1325; *Farinas,* 850 So.2d at 561.

Further, the Florida Supreme Court has set forth the following criteria for evaluating an insurer's conduct in handling claims involving a coverage issue:

> (1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided;
> (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds;
> (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue;
> (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and
> (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.

*Laforet* at 658 So.2d at 63.

A breach of this duty by an insurer which causes the entry of a judgment against its insureds in excess of the applicable policy limits gives rise to a claim for "bad faith." An insurer may be held liable for an excess judgment against its insured if, and only if, it has been found to

have breached its duty of good faith to its insured. *See Campbell v. Government Employees Ins. Co.*, 306 So. 2d 525, 530-531 (Fla. 1974). "To fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably. Rather, insurers must refrain from acting solely on the basis of their own interests in settlement." *Novoa v. GEICO Indem. Co.*, 542 F. App'x 794, 796 (11th Cir. 2013)(unpublished) (quoting *LaForet*). Further, under Florida law, bad faith is more than mere negligence. *Campbell*, 306 So. 2d at 530-531; *see also DeLaune*, 314 So.2d at 603. Moreover, "there must be a causal connection between the damages claimed and the insurer's bad faith. *See Perera v. United States Fidelity and Guaranty Co.*, 35 So. 3d 893, 900-02 (Fla. 2010)(; *Maldonado v. First Liberty Ins. Corp*, 546 F. Supp. 1347, 1353 (S. D. Fla. 2008).

Florida law clearly provides that bad faith claims are appropriately and properly resolved by entry of summary judgment in favor of the insurer where the insurer did not, as a matter of law, act in bad faith. *See Berges v. Infinity Ins. Co.*, 896 So.2d 665, 680 (Fla.2004)( "Although the issue of bad faith is ordinarily a question for the jury, this Court and the district courts have, in certain circumstances, concluded as a matter of law that an insurance company could not be liable for bad faith."). The present litigation involves an insurance bad faith claim that should be resolved by summary judgment in favor of GEICO.

## III. GEICO IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON PLAINTIFF'S BAD FAITH CLAIM

### A. No reasonable jury could find that GEICO acted in bad faith its handling of the multiple claims that arose out of the March 4, 2006 accident.

Based on the undisputed material facts, GEICO is entitled to summary judgment on Plaintiff's bad faith claim because no reasonable jury could conclude that GEICO acted in bad

faith in its handling of the multiple claims that arose out of the March 4, 2006 accident, including the Pinedo claim. Specifically, after being notified of the alleged theft of JIMENEZ's vehicle and accident, GEICO immediately began its investigation to determine if coverage was available under the Policy. After its investigation revealed that JIMENEZ's vehicle may have been operated with a key, thus creating potential liability on JIMENEZ, GEICO provided coverage for the accident and attempted to settle all of the claims for his full $20,000 BI policy limits.

Further, the undisputed facts demonstrate that GEICO's conduct, in investigating and handling the multiple claims that arose as a result of the March 4, 2006 accident, was consistent with an insurers good faith duty under *Farinas.* Specifically, GEICO fully investigated all of the claims presented against JIMENEZ and quickly determined that all the claims exceed his BI policy limits. GEICO determined, through its investigation, that there were four (4) claims total, two (2) death claims and two (2) serious injury claims. Accordingly, GEICO decided to try and settle all four claims for the available $20,000 BI policy limits. GEICO also attempted to limit JIMENEZ's liability exposure by attempting to settle as may claims as possible within his policy limits. As mentioned above, GEICO determined that it was likely that the claims could exceed the available policy limits and informed JIMENEZ and the claimants of this possibility. GEICO also tendered its policy limits to all claimants on a global basis while attempting to schedule the global settlement conference. *See Marsh,* 303 F.Supp.2d 1321 (providing that an insurer does not act in bad faith when it offers the full policy limits to multiple claimants on a "global basis" and attempts to arrange a settlement conference). Additionally, GEICO attempted to minimize the magnitude of possible excess judgments against JIMENEZ by attempting to set up a global settlement conference to settle all claims within JIMENEZ's policy limits. GEICO and Cicchetti

diligently attempted to secure all the claimants attendance at the June 26, 2006 global settlement conference, including a representative on behalf of Pinedo. When these efforts failed, and no representative of the Farleys or Pinedo attended the conference, GEICO tendered to Ortega to settle his claim. GEICO also sought to set up a second global settlement conference with the known claimants. GEICO did not indiscriminately settle selected claims while ignoring others. Lastly, the undisputed facts show GEICO kept JIMENEZ informed throughout the claim resolution process. GEICO informed JIMENEZ of the multiple BI claims presented against his policy and warned of the possibility that the claims may exceed his policy limits. GEICO further advised JIMENEZ of the possibility of a lawsuit, that GEICO would defend same, his right to retain personal counsel and his right to personally contribute towards settlement. Therefore, no reasonable jury could find that GEICO acted in bad faith prior to JIMENEZ's admission of fraud.

**B. No reasonable jury could find that GEICO acted in bad faith by requesting a determination of coverage after JIMENEZ's admission of fraud.**

When GEICO eventually discovered that JIMENEZ had lied about his participation in the accident, a coverage issue arose based on the provisions in the Policy which purport to void coverage when an insured makes fraudulent misrepresentations of material facts during the reporting of a claim. In the context of a coverage dispute, courts use the *Laforet* factors *supra*, to determine whether an insurer has acted fairly and honestly towards its insured and with due regard for the insured's interests. *Id*. For example, in *Pozzi Window Co. v. Auto-Owners Ins.*, relying on the *LaForet* factors, the Court entered summary judgment in favor of the insurer finding that:

> ... The evidence shows that Auto–Owners denied coverage, defended the case under a reservation of rights, challenged coverage through the appropriate legal mechanism, and

> eventually was found to be wrong on the issue of coverage. Despite Pozzi's characterization of the evidence, it is clear that Auto–Owners did what insurance companies properly do when they have a serious doubt as to coverage: it defended under a reservation of rights, and sought declaratory relief on the question of coverage. There was no evidence of unreasonable conduct, no evidence of any independent tort, and no evidence that it exposed its insureds to excess judgments by its conduct. It did not mislead its insureds, and did not cause them any damages other than the amount of coverage provided by the policy.

*Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1188-89 (11th Cir. 2006) *certified question answered sub nom. Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So. 2d 1241 (Fla. 2008).

Here, on April 9, 2007, GEICO was informed that JIMENEZ had pled guilty to leaving the scene of the accident and for failing to render aid. By April 9, 2007, based on JIMENEZ's admission, GEICO sent a reservation of rights letter to JIMENEZ. GEICO reserved its rights to deny coverage to JIMENEZ, agreeing to defend him subject to the reservation of rights.

Further, it is also undisputed that GEICO promptly attempted to resolve the coverage issue by filing Declaratory Judgment action. Specifically, GEICO became aware that JIMENEZ committed fraud when he allocuted at his sentencing hearing on May 18, 2007. Shortly thereafter, on June 26, 2007, GEICO filed a Declaratory Judgment action against JIMENEZ , Ortega, the estate and survivors of Pinedo, and the Farleys. GEICO also took reasonable efforts and measures to resolve the coverage issue in such a way as to limit any potential prejudice to JIMENEZ. GEICO defended JIMENEZ under a reservation of rights and challenged coverage through the appropriate legal mechanism by filing a Declaratory Judgment action. GEICO adequately protected JIMENEZ's rights by providing him a defense while it pursued its legal right to determine coverage. GEICO also advised JIMENEZ of the claims being brought against him, the fact that a coverage issue was being investigated, that coverage might be denied

depending on the outcome of the coverage investigation, and of his right to obtain personal counsel.

GEICO was also diligent and thorough in its investigation of the facts giving rise to the coverage issue. The facts show that that JIMENEZ steadfastly denied that he was operating his vehicle at the time of the accident. These denials were contained in the vehicle theft report made with the Orlando Police Department on March 4, 2006, his recorded statement taken on March 14, 2006, and in his answers to interrogatories and responses to requests for admissions in the Ortega litigation.

The undisputed fats show that the he coverage issues was substantive. Specifically, GEICO's policy clearly states, as set forth in its reservation of rights letter of April 9, 2007, "[c]overage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance: 1) at the time application is made; or 2) at any time during the policy period; or 3) ***in connection with the presentation or settlement of a claim***" [Ex. HH](emphasis added). Based on the plain language of the policy, no reasonable jury could conclude that GEICO was unreasonable in believing that JIMENEZ breached the Policy by his repeated misrepresentations and fraud. The undisputed facts show that GEICO was at all time trying to settle all the claim on a global basis prior to learning of JIMENEZ's fraud. GEICO's settlement efforts would have continued but for JIMENEZ's fraud and the facts show that it was JIMENEZ, not GEICO, that created the coverage issue. At the time GEICO brought the Declaratory Judgment action, it reasonably believed that JIMENEZ would not be afforded coverage based on his fraud. Thus, because of the multiple pending claims, it was proper for GEICO to wait for a judicial determination of coverage. At the time that the time-limit demand

was sent by Pinedo, GEICO's Declaratory Judgment Action was pending as to coverage. Accordingly, based on JIMENEZ's fraud, GEICO was unable to offer the limits to Pinedo at the time of the demand as there had been no determination of coverage. *See e.g. Wollard v. Lloyd's & Companies of Lloyd's*, 439 So. 2d 217, 218 (Fla. 1983) (finding that when the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured); *Canal Ins. Co. v. SP Transp., Inc.*, 272 F. App'x 825, 828 (11th Cir. 2008)(stating that under Florida law, the settlement is the equivalent of a confession of judgment because the insurer has declined to defend its position in the pending suit); *O'Malley v. Nationwide Mut. Fire Ins. Co.*, 890 So. 2d 1163, 1165 (Fla. 4th DCA 2004).

Based on the foregoing, as in *Pozzi*, summary judgment should be entered in GEICO's favor as there is no evidence of unreasonable conduct on GEICO's part, no evidence that *GEICO's* conduct exposed JIMENEZ to an excess judgment, and no evidence that GEICO misled JIMENEZ. Further, based on the undisputed facts, no reasonable jury could find that GEICO acted in bad faith in seeking a judicial resolution of the coverage issue created by JIMENEZ. Therefore, GEICO is entitled to summary judgment in its favor on Plaintiff's claim for bad faith.

## IV. GEICO IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

### A. Plaintiff's breach of contract claim is subsumed into his bad faith claim.[10]

[10] GEICO acknowledges that the court ruled that Plaintiff's complaint stated a cause of action for breach of contract under the motion to dismiss standard of Federal Rule of Civil Procedure 12. *See* Doc. 21.

In Florida a bad faith claim is an action *ex contractu*. *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13 (Fla. 1976); *Nationwide Mut. Ins. Co. v. McNulty*, 229 So.2d 585 (Fla.1969); *American Vehicle Ins. Co. v. Goheagan*, 2010 WL 2076989 (Fla. 4th DCA 2010). When bad faith is alleged, "the cause is one for breach of a contractual obligation implied in law, namely good faith." *North American Van Lines, Inc. v. Lexington Ins. Co.*, 678 So.2d 1325, 1330 (Fla. 4th DCA 1996).

Count One of the Plaintiff's Complaint purports to be for "breach of contract," but actually seeks recovery of the excess judgment entered against the Plaintiff in the Pinedo lawsuit for GEICO's "failure to settle" the Pinedo claim. The Plaintiff's claim for "breach of contract" alleges that GEICO was presented with an offer to settle the Pinedo claim, failed to settle the claim, and thereby exposed the Plaintiff to an excess judgment. In *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 672 (Fla. 2004), the Florida Supreme Court described the duty of good faith as follows:

> It has long been the law of this State that an insurer owes a duty of *good faith* to its insured. Thus, the insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

(emphasis added)(*citing Boston Old Colony*, 386 So.2d at 785).

It is precisely this duty of good faith to "give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so" that the Plaintiff alleges GEICO breached in his "breach of contract" claim. Regardless of the Plaintiff's attempts to disguise this claim as one for "breach of contract," it is a claim seeking recovery of an excess

judgment that allegedly resulted from GEICO's "failure to settle" a claim and, as such, is clearly a claim for bad faith. *See* Florida Standard Jury Instruction 404.4 ("Bad faith on the part of an insurance company is *failing to settle a claim* when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regard for his interests.")(emphasis added); *Campbell*, 306 So.2d 525, 530-531 (Holding that the standard "for determining liability in an excess judgment case is bad faith...")

Here, Plaintiff's breach of contract claim, as alleged in the Complaint, only states that GEICO allegedly breached the contract by "failing to settle the Pinedo claim when presented" and "refusing to unconditionally defend Plaintiff in the Pinedo suit." [Doc. 1, pages 3-4]. Because Count One of the Plaintiff's Complaint for "breach of contract" is simply a mis-labeled claim for bad faith, it is redundant and duplicative of the Plaintiff's actual claim for bad faith set forth in Count Two of his Complaint. Accordingly, GEICO is entitled to summary judgment in its favor on Plaintiff's breach of contract claim as it is subsumed into the bad faith claim. *See Torres v. GEICO General Ins. Co.*, S.D. Fla., case: 9:13-cv-80583-KLR (order dated 11/20/13) (unpublished) [*See* Order dated November 20, 2013, attached as Ex. BBB]; *Government Employees Ins. Co. v. Prushansky*, 2012 WL 6103220 *3 (S.D. Fla. December 17, 2012).

A breach of contract claim can only be brought when it "can be determined objectively from the insurance contract itself without inquiry into whether the insurer acted in good faith or bad faith." *See Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n*, 483 So. 2d 513, 516 (Fla. Dist. Ct. App. 1986). Here, Plaintiff's breach of contract claim seeks damages, "...including, but not limited to: the entry of the judgment and the excess judgment against him." [Doc. 1]. However," the duty to defend in excess of the policy limits, by its very

definition, could not include a claim for breach of the contract because the insurance contract would only provide for insurance benefits within its policy limits. It is only through acts constituting bad faith that an insurer is obligated to pay in excess of the policy limits." *Prushansky*, 2012 WL 6103220 *3. Any determination on Plaintiff's breach of contract claim requires a determination into whether GEICO acted in bad faith. *See e.g. State Farm Mut. Ins. Co. v. Laforet*, 658 So2d 55, 63 (Fla. 1995). Accordingly, as a matter of law, Plaintiff's breach of contract claim is subsumed into Plaintiff's bad faith claim.

Additionally, this Court relied on *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 Fed. Appx. 640 (11th Cir. 2009), in determining that Plaintiff's breach of contract claim should not be dismissed. However, the *Ernie Haire Ford* case, and those relied on by the Eleventh Circuit as a basis for their opinion, **did not seek an excess judgment as damages**. *See Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n*, 483 So. 2d 513, 515 (Fla. Dist. Ct. App. 1986)(alleging that the insurer breached its duty to defend and sought to recover the costs of conducting its own defense); *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, 864 So. 2d 1126, 1128 (Fla. 2nd DCA. 2003)(finding that the measure of Vernay's damages for Reliance's breach of contract was Vernay's attorney's fees and costs incurred in the underlying action). Therefore, as the damages sought by Plaintiff in his breach of contract claim clearly require a determination as to whether GEICO acted in bad faith, Plaintiff's claim for breach of contract, as alleged, is subsumed into Plaintiff's bad faith claim.

**B. As a matter of law GEICO did not breach the Policy.**

JIMENEZ's Complaint alleges that GEICO breached the insurance policy contact by "failing to settle the Pinedo Claim when it was presented" and by "refusing to unconditionally defend Plaintiff in the Pinedo Suit." [Doc. 1 at ¶¶ 19 and 22]

GEICO is entitled to summary judgment on Plaintiff's breach of contract claim because as a matter of law GEICO did not breach the Policy by "failing to settle the Pinedo claim when presented." The duty to defend has no roots in the common law. It is purely a statutory or contractual duty. *Allstate Ins. Co. v. RJT Enterprises, Inc.*, 692 So. 2d 142, 144 (Fla. 1997)(providing). Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court. *See Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538-39 (11th Cir. 1995). Florida law provides that insurance policies, as with most contracts, are construed according to the plain meaning of the language within the policy. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla.2005); *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 33-34 (Fla. 2000); *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010)(applying Florida law). Thus, if a policy provision is "clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Auto-Owners Ins. Co.*, 756 So.2d at 33-34 (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996)); *see State Farm Mutual Automobile Insurance Co. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986)(reasoning that courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.").

In the instant matter, GEICO's Policy provides in relevant part under the liability coverage section:

> Under Section I, we will pay damages which an insured becomes legally obligated to pay because of:
> 1. Bodily injury, sustained by a person, and
> 2. Damage to or destruction of property,
>
> arising out of the ownership, maintenance, or use of the owned or non-owned auto. We will defend any suit for damages under the terms of this policy. We ***may*** investigate and settle any claim or suit.

[*See* Ex. A at the Policy (emphasis added)]. Based on the unambiguous language of the Policy, GEICO "may" settle any claim or suit. The Policy does not say that GEICO "shall" or "will" settle any claim. Accordingly, because the Policy language is clear and unambiguous that GEICO "may" settle any claim, it cannot be a breach of the policy contract if GEICO did not settle a claim (no matter the reason). In the instant matter, GEICO cannot breach the insurance contract by "failing to settle the Pinedo claim when presented" as there is no provision in the insurance contract which obligates GEICO to do so. GEICO's decision as to whether to settle a claim is based on GEICO's claims handling, which requires a determination of whether GEICO acted in bad faith. *See Vest v. Travelers Ins. Co.*, 753 So. 2d 1270 (Fla. 2000) ("[a] claim for bad faith failure to settle is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay.").

Additionally, GEICO is entitled to summary judgment on Plaintiff's breach of contract claim because as a matter of law GEICO did not breach the Policy by "refusing to unconditionally defend Plaintiff in the Pinedo suit." It is well-settled law in Florida that an insurer does not breach its duty to defend by offering to defend an insured under a reservation

of rights. *See Travelers Indem. Co. v. Illinois v. Royal Oak Enterprises, Inc*., 344 F. Supp.2d 1358, 1369 (M.D. Fla. Oct. 13, 2004); *Giffen Roofing Co. v. DHS Developers, Inc*., 442 So.2d 396, 396-397 (Fla. 5th DCA 1983); *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 477 (Fla. 3rd DCA 1997). Here, the undisputed facts establish that GEICO never denied coverage to JIMENEZ and never failed to defend JIMENEZ. In fact, the facts establish that GEICO assigned Golding to defend JIMENEZ's interests regarding the global settlement conference, prior to any suit being filed against him. Further, once Ortega filed suit against JIMENEZ, GEICO appointed Deaton to defend JIMENEZ and JIMENEZ accepted GEICO's defense. Once the Pinedo action was filed, GEICO again assigned Deaton to defend JIMENEZ, however JIMENEZ rejected the defense.[11] Accordingly, at no time did GEICO fail to defend JIMENEZ or breach its duty to defend. Accordingly, based on the allegations in Plaintiff's Complaint, GEICO is entitled to summary judgment as a matter of law on Plaintiff's claim for breach of contract.

WHEREFORE, **GEICO GENERAL INSURANCE COMPANY** respectfully requests that this Honorable Court enter an Order granting summary judgment in favor of GEICO and providing such further relief as the Court deems appropriate.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the

11

Any argument by JIMENEZ that GEICO did not appoint mutually agreeable counsel is also without merit, as GEICO assigned Ringer, Henry, Buckley & Seacord law firm to represent him. That firm has represented JIMENEZ in the action brought by Ortega against JIMENEZ, a defense which JIMENEZ accepted. In fact, Ringer Henry are still JIMENEZ's counsel in that action, which is currently on appeal from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2006-CA-004242-O.

attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ **Jordan Thompson**
**B. RICHARD YOUNG**
Florida Bar No.: 442682
**JORDAN M. THOMPSON**
Florida Bar No.: 87600
**MEGAN ALEXANDER**
Florida Bar No.: 58883
Young, Bill, Roumbos & Boles, P.A.
Post Office Drawer 1070
Pensacola, Florida 32591-1070
Telephone (850) 432-2222
Facsimile (850) 432-1444
ryoung@flalawyer.net
jthompson@flalawyer.net
malexander@flalawyer.net

**SERVICE LIST**
**Antonio James Jimenez v. Government Employees Insurance Company**
**Case No.: 6:10-cv-640-Orl-35KRS**
**United States District Court, Middle District of Florida**

Mark A. Nation, Esq.
Thomas Brown, Esq.
The Nation Law Firm
570 Crown Oak Centre Dr.
Longwood, FL 32750
mnation@nationlaw.com
*Via CM/ECF*